Cleckley *vs.* Beall & Fulton.

---

Marsden A. Cleckley, plaintiff in error, *vs.* Beall & Fulton, defendants in error.

Where a case has been fairly submitted to the jury, and their verdict is sustained by the evidence, the Court should not set the verdict aside and grant a new trial.

Equity.    New trial granted.    By Judge Gibson.    Richmond Superior Court, January Term, 1868.

Cleckley averred that Beall & and Fulton were commission merchants in Augusta, and that Beall induced him to believe that by an investment of money in cotton, he could make considerable profits ; that he had but small means, and furnished to them $2,000 00, with the understanding·that with it, cotton, in small lots, should be bought, and that they should sell the same and pay him the profits after taking out their commissions ; that they bought cotton for him, and by

his consent, sent it to Liverpool with some of their own; meanwhile they advanced him $120 00, and finally rendered him an account, showing that he was in their debt in the sum of $349 79; he said that this loss of his capital resulted by their buying on his account, without authority, large amounts of cotton, over and above what his $2,000 00 would purchase, and then charging him with the loss on the same. They prayed for discovery, account and settlement.

Beall alone answered the bill. He answered that the $2,000 00 was advanced, $1,000 00 at a time, not to be invested, but as a *bonus*, to cover all loss in the operation, and to enable them to buy for him, from time to time, such quantities of cotton as they might think would be profitable; and in support of this idea, stated that before they got the second $1,000 00 from him, they had bought for him thirty-five bales of cotton, which cost much more than $1,000 00, o which he was well aware; that on the sale of these bales they made for him, $48 00 as his share of the profits, and by his consent, with the $1,048 00 they bought more cotton for him, etc.,

At the trial, it was shown by several commission merchants that, the rule with commission merchants, when money was deposited to buy cotton, was not to buy more than the deposit would pay for, and not to reinvest or ship unless by consent or directions from the depositor, and that it was not known, in such case, that a depositor ever lost all his deposit and came out in debt to his commission merchant; that the commission merchant could not purchase beyond the capacity of the deposit, unless the deposit was made as a *bonus*, and where that is done, it is by an express special contract which includes the quantity of cotton to be bought, and usually there is no shipment in case of a *bonus*, though since the war this is sometimes done by agreement.

CLECKLEY being sworn said that in August, 1865, Beall told him it was better to let them buy small lots of cotton for him than to keep his means idle; that he let them have $1,000 00 and they bought for him eight bales at $1,224 00, and when notified of its cost, he told Beall he could not then

Cleckley *vs*, Beall & Fulton.

pay the excess, and Beall said they would arrange it in future; that in about six weeks, Beall told him, they had sold the eight bales, and made a profit, and asked if he did not have some more money; that he gave them some Charleston and Memphis Railroad coupons, and some cash, making another $1000 00, to be used with the other, on the terms charged in his bill; that, in a few days, Beall told him they had bought, with his money, good middlings at forty-three cents per pound; that cotton declined in Augusta, and, upon Beall's suggesting it, and telling him that they were going to ship their cotton to Liverpool, he consented that they should ship his also; that he frequently called for a settlement, was told that they had not got the returns from the cotton, and, on one occasion, Beall mentioned that they had drawn on his cotton, on which he remonstrated with Beall, and Beall said he thought Cleckley had given him authority to draw on it, but never mind, he would make it all right; and, that finally, in March, 1867, they presented the account, bringing him in debt, as aforesaid. He refused to pay, and filed his bill. The plaintiff closed. Beall, in behalf of defendants, reiterated the substance of his answer, insisting that the money was a *bonus*; but admitting that there was no limit prescribed, as to the amount to be purchased, and that nothing was said about *bonus*, but he thought Cleckley so understood it. He said Cleckley bought the first eight bales himself, and the account was correct, and should be paid. Defendant closed.

CLECKLEY recalled, reiterated his statements, and said he did not buy the eight bales, and never, in his life, bought a bale of cotton.

The verdict was for $1424 78, with interest from 1st January, 1867, against Beall & Fulton. They moved for a new trial, upon the grounds that the verdict was against the evidence, and the charge of the Court in this, that the answer, responsive to the bill, denied the entire ground of complainant's case, and was contradicted only by the testimony of complainant, no additional circumstance being proved to authorize the verdict.

40

The Judge granted the new trial, and this is assigned as error.

HOOK & CARR, for plaintiff in error.

WM. T. GOULD, for defendant in error.

WALKER, J.

This case was fairly submitted to the jury, which was composed of business men. There was evidence sufficient to sustain the verdict. Indeed, we think it was right; most certainly it was not decidedly and strongly against the weight of the evidence. Had Beall been satisfied with his answer, as drawn by his counsel, perhaps the Judge would have been justified in granting a new trial; but he introduced himself as a witness, and we think a fair construction of his testimony shows that Cleckley never understood that he was depositing money as a "*bonus.*" Cleckley swears so explicitly, and Beall's testimony is sufficiently corroborative to overcome the answer, especially when taken in connexion with the testimony of the other commission merchants as to the usages of trade in the place where this transaction occurred. When the Court grants a new trial on the ground that the verdict is against the evidence, this Court will reverse such judgment where it appears from the record that the verdict is not contrary to the evidence. Pitts vs. Thrower, 30 Geo. R., 212. The verdict being right, the judgment of the Court setting it aside was wrong, and the judgment is therefore reversed.